UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IGNATZ WEISS, individually and on behalf of all others similarly situated,

                          Plaintiff(s).

   -against-

SHERLOQ REVENUE SOLUTIONS, INC.,

                          Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/12/2021

No. 19-cv-7103 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Ignatz Weiss ("Plaintiff") commenced the instant putative class action against Defendant Sherloq Revenue Solutions, Inc. ("Defendant" or "Sherloq Revenue") alleging claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). (Compl. (ECF No. 1).)  Before the Court is Defendant's motion pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)) for judgment on the pleadings.  For the following reasons, Defendant's motion is GRANTED, and Plaintiff's Complaint is dismissed without prejudice.

## BACKGROUND

    The following facts are derived from the Complaint unless otherwise noted and are accepted as true for the purposes of this motion except as otherwise noted.

    Plaintiff, a resident of Orange County, New York, is alleged to owe a debt arising out of an unspecified transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. (Compl. ¶¶ 5-6 & 26.)  Plaintiff does not otherwise provide any detail regarding the source of the alleged debt obligation and appears to contend that this information resides with Defendant.  Plaintiff

states that he does not know when the debt was assigned to Defendant or transferred to Defendant for collection, and states that the debt is alleged by Defendant to be in default. (Compl. ¶¶ 29-30.)

On December 4, 2018, Plaintiff received a letter (the "December Letter") which he attached to the Complaint. (Compl. ¶ 31.) The December Letter contains a prominent letterhead stating "SHERLOQ Financial" on the upper left hand portion of the document and is addressed to Ignatz Weiss. (*See* Compl. Ex. 1 (ECF 1-1).) In relevant part, it states "Dear Ignatz Weiss," identifies a balance of "$193.74," identifies "Orange Regional Medical Center" as a creditor, states that "the balance of $193.74 has been placed for collection with us" and provides the following notification:

> UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS
> AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE
> THE VALIDITY OF THIS DEBT, OR ANY PORTION
> THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS
> VALID.  IF YOU NOTIFY THIS OFFICE IN WRITING
> WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT
> YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY
> PORTION THEREOF, THIS OFFICE WILL OBTAIN
> VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A
> JUDGMENT AND MAIL A COPY OF SUCH JUDGMENT OR
> VERIFICATION TO YOU.  IF YOU REQUEST OF THIS
> OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING
> THIS NOTICE THIS OFFICE WILL PROVIDE YOU WITH
> THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR,
> IF DIFFERENT FROM THE CURRENT CREDITOR.

(Compl. Ex. 1.) The December Letter also includes multiple addresses: (1) an address that appears to be a portion of the letterhead stating 134 S. Tampa Street, Tampa, FL 33602, (2) an address reflecting a P.O. Box in Pennsylvania, and (3) an address reflecting a P.O. Box in Tampa, Florida. (*Id.*) The December Letter also avers that it is a communication from a debt collector in an attempt to collect debt and identifies payment methods available to the debtor. (*Id.*)

On January 9, 2019, Plaintiff received a letter (the "January Letter") which he also attached to the Complaint.  (Compl. ¶ 32.)  The January Letter also contains a prominent letterhead stating "SHERLOQ Financial" on the upper left hand portion of the document and is also addressed to Ignatz Weiss.  (*See* Compl. Ex. 1 (ECF 1-2).)  It also states "Dear Ignatz Weiss," identifies a balance of "$193.74," identifies the creditor as "Orange Regional Medical Center," states that "the balance of $193.74 has been placed for collection with us" and provides the following notification:

> CAN'T AFFORD TO PAY IN ONE LUMP SUM PAYMENT? RESOLVE THIS BY MAKING THREE MONTHLY PAYMENTS!
>
> To accept this offer and resolve your debt with monthly payments: (1) Make your first payment of $64.58 by 02/01/19; and (2) Then pay $64.58 by the 1ST of each following month until the remaining two monthly payments have been paid.

(Compl. Ex. 2.)  The January Letter likewise contains the same three addresses identified in the December Letter, avers that it is a communication from a debt collector in an attempt to collect debt, and identifies payment methods available to the debtor.  (*Id.*)

Plaintiff alleges that the letters were sent by Defendant Sherloq Revenue.  However, the December Letter and January Letter both prominently reflect that the sender is Sherloq Financial.  As this Court gleaned from public records that are subject to judicial notice, as discussed in further detail below, Sherloq Financial and Sherloq Revenue are separately incorporated entities.

Plaintiff filed the instant Complaint alleging that Defendant violated the FDCPA by (1) sending the December and January letters containing multiple addresses which overshadow the disclosure of the consumer's right to dispute the debt, right to receive verification of the debt or a copy of a judgment against the consumer, right to request the name and address of the original creditor; (2) sending the December and January Letters, which are reasonably susceptible to an

inaccurate reading by the least sophisticated consumer due to the multiple addresses provided; (3) sending the January Letter, which is susceptible to an inaccurate reading by the least sophisticated consumer due to uncertainty with respect to whether the settlement offer required payment by Defendant before the stated deadline or receipt of payment by Defendant by the stated deadline.  (Compl. ¶¶ 68-106.)  Plaintiff brings the foregoing claims on behalf of himself and a purported class of "consumers to whom Defendant sent a collection letter substantially and materially similar to the Letter sent to Plaintiff."  (*Id.* ¶ 108.)

## STANDARD ON A MOTION FOR JUDGMENT ON THE PLEADINGS

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'"  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007)).  The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006); *see also* Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  The Court must take all material

4

factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Likewise, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47 (2d Cir. 2011). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## **DISCUSSION**

Defendant Sherloq Revenue argues that it is wrongly named as a defendant in this action because a separate entity, Sherloq Financial, was the actual entity that sent the communications at issue in this litigation. (Defendant's Memorandum of Law in Support of its Motion for Judgment on the Pleadings ("Def's Mem.") (ECF No. 14) at 10.) In support of this position, Sherloq relies on two forms of evidence. The first form of evidence is gleaned directly from the attachments to the Complaint – *i.e.*, the very letter that Plaintiff alleges constituted a FDCPA violation prominently indicates that "Sherloq Financial" is the sender. (*Id.*) On the basis of this evidence, Sherloq Revenue asserts that it is not the sender and accordingly the claims against it cannot survive. The second form of evidence is an affidavit from Sherloq Revenue's general counsel averring that, among other things, "Sherloq Revenue and Sherloq Financial are two separate and distinct entities" (Affidavit of William Gene Cole ("Cole Aff.") (ECF No.14-1) ¶ 4), and that "Sherloq Revenue did not send the letters attached to Plaintiff's Complaint" (Cole

5

Aff. ¶ 6). These statements are excluded by the Court because they were not attached to, or incorporated by reference in, the complaint; judicial notice may not be taken of them; and the complaint does not rely heavily upon their terms.[1]  *See Ferrante v. L. Offs. of Lewisohn & Lewisohn*, No. 15-CV-5473(SJF)(SIL), 2016 WL 8711075, at *3 (E.D.N.Y. July 15, 2016).

Plaintiff primarily responds by attacking whether or not Sherloq Revenue and Sherloq Financial should be treated as distinct entities.  (Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl's Opp.") at 9-10.)  Though not well-developed, Plaintiff appears to assert that Sherloq Revenue and Sherloq Financial are alter egos based on additional extrinsic evidence, *i.e.*, he asserts that Defendant's website describes Sherloq Financial as a "collection division" of Sherloq.  (*Id.*)  Plaintiff further contends that he should be permitted to take discovery in order to develop record that the Sherloq Financial and Sherloq Revenue are alter egos.  (*Id.* at 10.)

In addressing this issue, the Court must first address whether sending a letter is a requirement to pleading a prima facie FDCPA claim.  Second, the Court must address whether, from the four corners of the complaint, Plaintiff plausibly alleged that Sherloq Revenue sent the subject letter to Plaintiff.  Finally, the Court must assess whether, if Sherloq Revenue did not send the letter, can that conduct nonetheless be imputed to it for the purposes of establishing liability under the FDCPA.

### I. Whether Defendant Needs to Send a Communication to Trigger Liability Under the FDCPA

Congress enacted the FDCPA, in part, "to eliminate abusive debt collection practices" and "protect consumers from deceptive or harassing actions taken by debt collectors." 15 U.S.C.

---

[1] The Court does not reach whether the exhibits referenced in the Cole Aff. are appropriately before the Court on a motion to for judgment on the pleadings as this motion is resolved in Defendant's favor without resort to those documents.

§ 1692; *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 93 (2d Cir. 2012) (internal citations omitted); *see Vincent v. The Money Store*, 736 F.3d 88, 101 (2d Cir. 2013) (citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989)) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices."). To achieve these ends, the FDCPA imposes, "among other things, notice and timing requirements on efforts by 'debt collectors' to recover outstanding obligations." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 58 (2d Cir. 2004). Pursuant to Section 1692k of the FDCPA, "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person." 15 U.S.C. § 1692k.

Thus, to state a claim under the FDCPA, a plaintiff must demonstrate that: (1) the plaintiff is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt collector as defined in the statute; and (3) the defendant has engaged in an act or omission in violation of the FDCPA. *Cohen v. Ditech Fin. LLC*, 15-CV-6828, 2017 WL 1134723, at *5 (E.D.N.Y. Mar. 24, 2017) (citing *Scaturro v. Northland Grp.*, No. 16-CV-1314, 2017 WL 415900 at *2 (E.D.N.Y. Jan. 9, 2017)). The statute defines "debt collector"as,

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a. Based on this definition, it is only under narrow circumstances that a Court will impute "debt collector" status to a distinct entity that did not send, or act jointly with the entity that sent, the at issue communication. *See, e.g.*, *White v. Goodman*, 200 F.3d 1016, 1019

7

(7th Cir. 2000) ("The Fair Debt Collection Practices Act is not aimed at the shareholders of debt collectors operating in the corporate form" or "at companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters."); *Kennedy v. CompuCredit Holdings Corp.*, 9 F. Supp. 3d 1314 (M.D. Fla. 2014) (holding that it is sufficient to allege that two entities acted jointly).

As is relevant here, Plaintiff alleges violations of 15 U.S.C. §§ 1692g and 1692e. The factual predicate for each of these claims is that Defendant sent two letters which, based on purported misrepresentations or misleading communication contained therein, allegedly gives rise to liability. (*See* Compl. ¶¶ 47-53 & 68-77 (alleging violations of 15 U.S.C. §§ 1692g(b), 1692e and 1692e(1) arising from the sending of the December Letter containing multiple addresses for); Compl. ¶¶ 98-106 (alleging violations of 15 U.S.C. §§ 1692e and 1692e(10) arising from the sending of the January Letter)). Accordingly, inasmuch as Plaintiff fails to plausibly allege that Defendant sent the December or January Letter, acted jointly with the entity that did so, or is an alter ego of the entity that sent the letters, then Plaintiff's theory of liability fails.

**II.    Whether Sherloq Revenue Sent the At-Issue Letters**

There is a fairly clear contradiction on the face of the Complaint that gets to the heart of the viability of Plaintiff's claims. On the one hand, Plaintiff alleges that Sherloq Revenue "contacted Plaintiff by letter . . . dated December 4, 2018" and another letter "dated January 9, 2019." (Compl. ¶¶ 31-32.) However, the actual letters cited to in the Complaint and attached therein state that the letter is from "Sherloq Financial" and do not reference "Sherloq Revenue" at all. (*See* Compl. Ex. 1 (ECF No. 1-1) (stating "SHERLOQ Financial" on the upper left corner of the letter); Compl. Ex. 2 (ECF No. 102 (same).) In resolving this contradiction, the Court notes that "where a conclusory allegation in the complaint is contradicted by a document

attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp.*, 671 F.3d at 146–47.  Accordingly, as Compl. Exs. 1 and 2 contradict the allegation that Sherloq Revenue sent the letter, the Court does not accept Plaintiff's allegations to that effect.

As the Complaint clearly demonstrates that Sherloq Financial sent the letter, the Court must examine whether Sherloq Financial and Sherloq Revenue are legally distinct entities.  Plaintiff makes no allegation in the Complaint that Sherloq Financial is a division of Sherloq Revenue and, in his opposition papers, appears to concede that Sherloq Financial and Sherloq Revenue are separately incorporated.  Indeed, Plaintiff refers to Defendant's website for the position that Sherloq Financial became its own legal entity at some point.  (Pl's Opp. at 10.)  To the extent that Plaintiff contends that Sherloq Revenue and Sherloq Financial are not separately incorporated, that allegation is clearly contradicted by records maintained by the Florida Secretary of State.  *See* Florida Department of State, Division of Corporations Website, http://www.sunbiz.org (last visited March 11, 2021).  Indeed, the records from the Florida Secretary of State establish Sherloq Revenue Solutions, Inc.'s status as a business incorporated in Florida and Merchants Association Collection Division Inc. (dba Sherloq Financial) is another business incorporated in Florida.  Such records are subject to judicial notice. *See, e.g.*, Fed. R. Evid. 201; *Maller v. Rite Aid Corp.*, No. 1:14-CV-0270, 2016 WL 1275628, at *3 (N.D.N.Y. Mar. 31, 2016) ("[T]he Court may take judicial notice of Rite Aid New York's status as a business incorporated in New York based upon documents filed with the New York State Department of State."); *Desclafani v. Pave-Mark Corp.*, No. 07 CIV. 4639 (HBP), 2008 WL 3914881, at *6 (S.D.N.Y. Aug. 22, 2008) (taking judicial notice of records filed maintained by the Florida Secretary of State); *Access 4 All v. Oak Spring, Inc.*, 504CV75 (OC)(GRJ), 2005 WL

1212663 at *2 n. 16 (M.D.Fla. May 20, 2005).  And the Court is entitled to take sua sponte judicial notice of these public records as the filing of articles of incorporation is not a controversial fact.  *See, e.g.*, *Kaggen v. I.R.S.*, 71 F.3d 1018, 1022 (2d Cir. 1995).

Accordingly, the Court concludes that the Complaint fails to plausibly plead that Sherloq Revenue sent the at-issue letters as the Complaint clearly demonstrates that a distinctly incorporated entity sent the December Letter and January Letter and there is no allegation concerning joint action on behalf of these two distinctly incorporated entities.

### III.    Alter Ego Liability

The Court's taking judicial notice of separate incorporation as to Sherloq Revenue and Sherloq Financial does not necessarily end the inquiry.  The sending of the letter may arguably be attributable to Defendant under a theory of alter ego liability.  The parties' briefing does not cite to any authority establishing the viability of alter ego liability in this context, and the sources consulted by this Court indicate that the jurisprudence on whether affiliated entities can be liable for FDCPA claims under an alter ego theory is not well developed.  *See* Marjorie Wengert, *Causes of Action for Violation of Fair Debt Collection Practices Act*, 29 Causes of Action 2d 1 (2005) (noting that "[i]n the debt collection arena, there is only one case, *U.S. v. ACB Sales & Service, Inc.*, 590 F. Supp. 561 (D. Ariz. 1984), that applied the 'single enterprise doctrine.'").  Regardless, Plaintiff appears to believe this is his most viable basis for asserting claims against Sherloq Revenue as he entirely pivots to discussing facts that are only relevant to an alter ego theory of liability in his opposition papers (though they appear nowhere in the four corners of the Complaint).  For example, Plaintiff complains that Defendant has failed to "state whether one company exerts singular dominion and control over the other" or whether "either company [has a] separate business purpose[]".  (Pl's Opp. at 9-10.)  As examined in more detail below,

10

"domination" and "unity of business interests" are both factors in assessing whether two distinct entities are alter egos.

Pleading alter ego liability "requires more than conclusory allegations of control; the party seeking to establish alter ego liability must plead sufficient factual allegations to establish that [the related entity]'s domination of [the alleged alter ego] was the means by which a wrong was done to plaintiff." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13CV7639-LTS-MHD, 2015 WL 4040882, at *6 (S.D.N.Y. July 2, 2015) (internal quotation marks and citation omitted). In the related FDCPA context of claims that a creditor should be treated as the debt collector because they are alter egos, courts have made similar analytical inquiries. *See, e.g.*, *Mazzei v. Money Store*, 349 F. Supp. 2d 651, 661 (S.D.N.Y. 2004) (dismissing claims because "plaintiff does not sufficiently allege that [creditor] used [debt collector's] name to collect its debts, pretended to be [debt collector] or used an alias to that effect, or that [creditor] 'controlled almost every aspect' of [debt collector's] debt collection practice, rendering [debt collector] defendants' alter ego."). "To determine whether the necessary dominion and control exists for the Court to pierce the corporate veil, the Court must examine several factors, including (1) the sharing of a common office, staff, and ownership; (2) the intermingling of funds; (3) the treatment of the corporations as one, not separate, profit centers; (4) the lack of the conventions of corporate existence; and (5) any inadequate earnings." *Orenbuch v. N. Shore Health Sys., Inc.*, 250 F. Supp. 2d 145, 150 (E.D.N.Y. 2003).

The Complaint contains no allegations relating to any of the aforementioned factors, and accordingly fails to plead alter ego liability. Among other things, the Complaint does not mention Sherloq Financial, describe whether it shares overlapping management with Defendant, detail whether they share the same corporate offices, or employ any shared services. For the first

time in his opposition papers, Plaintiff notes that there is some reason to think that Sherloq Financial and Sherloq Revenue are treated as a single entity based on statements on Defendant's website. But this does not appear in the Complaint and is insufficient as a matter of law to plead alter ego liability.

***

As Plaintiff has failed to plausibly allege that Sherloq Revenue either sent the letter, acted jointly with Sherloq Financial in sending the letter, or that Sherloq Financial should be treated as an alter ego of Sherloq Revenue, Plaintiff has failed to plausibly allege any claims against Sherloq Revenue, and the Defendant's motion for judgment on the pleadings is GRANTED and Plaintiff's Complaint is dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Defendant Sherloq Revenue's motion to dismiss is GRANTED and Plaintiff's Complaint is dismissed without prejudice. Plaintiff is granted leave to Amend his Complaint with an eye towards addressing the pleading deficiencies described herein within thirty (30) days. If no amendment is made by April 12, 2021, or Plaintiff fails to move for an extension to that deadline, the Complaint will be dismissed with prejudice and the action terminated without further notice. The Clerk of the Court is kindly directed to terminate the Motion at ECF No. 13.

Dated: March 12, 2021　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge